UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RHONDA HUBBARD,**<br>Plaintiff,<br>vs.<br>**RCM TECHNOLOGIES (USA), INC.,**<br>Defendant. | CASE NO. 19-CV-6363-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD; JUDGMENT**<br><br>RE: Dkt. Nos. 44, 45 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement in this matter on May 12, 2021. (Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), Dkt. No. 43.) As directed by the Preliminary Approval Order, on July 6, 2021, plaintiff filed her unopposed motion for attorney's fees, costs, and service award. (Dkt. No. 44.) Thereafter, plaintiff filed her unopposed motion for final settlement approval on September 21, 2021. (Dkt. No. 66.) The Court held a hearing on October 26, 2020.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representative and class counsel are confirmed. The motion for attorney's fees, costs, and service award is also **GRANTED**. The Court **ORDERS** that class counsel shall be paid $375,000.00 in attorney's fees and $7,661.91 in litigation costs and that class representative and named plaintiff Rhonda Hubbard shall be paid a $10,000.00 incentive award.

I.  **BACKGROUND**

   A.  **Procedural History**

Plaintiff filed the putative class action complaint on October 4, 2019, alleging that defendant, a healthcare staffing company, underpaid employees staffed on travel assignments in California by excluding the value of weekly per diem and stipend payments from the "regular rate" when calculating overtime pay. (Dkt. No. 1.) The complaint asserts California state law claims for (1)

unpaid overtime under California Labor Code § 510, (2) unfair business practices under California Business & Professions Code § 17200, et seq., and (3) waiting time penalties under California Labor Code § 203. (*Id.*) Defendant denied any liability. (Dkt. No. 11.)

Plaintiff filed a motion for class certification on August 18, 2020, which defendant generally did not oppose but for a limited request to modify certain language in the proposed class notice. (Dkt. Nos. 30, 31.) The Court granted the motion on October 20, 2020, certifying the following class: "All non-exempt hourly employees employed by RCM Technologies (USA), Inc. in California who, at any time within four years prior to the filing of this lawsuit through the date of class certification, worked one or more workweeks in which they were paid overtime and received a weekly per diem or stipend." (Dkt. No. 35.)

Following class certification but prior to the issuance of the class notice, the parties reached a settlement with the assistance of experienced mediator Michael Loeb. The Settlement Agreement, attached hereto as **Exhibit 1**, the terms of which are incorporated herein unless specifically stated otherwise, defines the class as: "[A]ll non-exempt hourly employees employed by RCM Technologies (USA), Inc. in California who, at any time within four years prior to the filing of this lawsuit through the date of class certification on October 20, 2020, worked one or more workweeks in which they were paid overtime and received a weekly per diem or stipend." (Agreement ¶ 10.) The settlement does not involve the certification of a new class.

In its Preliminary Approval Order, the Court provisionally appointed Hayes Pawlenko LLP as Class Counsel, plaintiff Rhonda Hubbard as class representative, and ILYM Group Inc. as the settlement administrator. (Dkt. No. 43.)

B.     **Terms of the Settlement Agreement**

Under the terms of the Settlement Agreement, defendant will pay $1,500,000.00 into a common settlement fund, without admitting liability. This amount includes attorney's fees and costs, the cost of settlement administration, and the class representative's service award. However, the fund is exclusive of the employer's share of payroll taxes.

2

### 1. *Attorney's Fees and Costs*

Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to $500,000.00 in attorney's fees and no more than $20,000.00 in litigation costs. The common settlement fund also includes a provision for $15,000.00 in settlement administration costs; and up to $10,000.00 to be paid to plaintiff Rhonda Hubbard as a service award in exchange for a general release of all claims against defendants.

### 2. *Class Relief*

After deductions from the common fund for fees, costs, and service incentive awards as well as the administration expenses, approximately $1,092,343.14 will remain to be distributed among the participating class members.[1] This amount will be divided among the class members, pro rata, based on the number of overtime hours each class member worked in California during weeks in which the class member received a per diem payment between October 4, 2015 and the date of preliminary approval. Dividing this amount across the 307 class members yields an average recovery of approximately $3,558.12 per class member. The Settlement Agreement provides that no amount will revert to defendant.

### 3. *Cy Pres/Remainder*

The Settlement Agreement does not provide for *cy pres* distribution of unclaimed funds in the settlement. Any checks remaining uncashed shall be voided and the amount shall be deposited with the Northern District Court's Unclaimed Funds Registry in the name of the individual to whom the settlement check has been addressed. (Agreement ¶ 39.)

### 4. *Class Member Release*

In exchange for the settlement awards, class members will release claims against defendants as set forth in the Settlement Agreement at Paragraph 13.

**C.    Class Notice and Claims Administration**

Pursuant to the Settlement Agreement, the Court appointed ILYM Group Inc. to administer

---

[1] $1,500,000.00 (gross settlement fund) – $375,000.00 (approved fee award) – $7,661.91 (approved cost award) – $14,994.95 (settlement administration expenses) – $10,000.00 (approved service award) = $1,092,343.14

3

the fund and to contact the class members in the manner set forth therein and including the attachments contained within the Preliminary Approval Order. Class members were given until August 30, 2021, to object to or exclude themselves from the Settlement Agreement. None of the 307 total class members objected or requested to opt out.

**II.    FINAL APPROVAL OF SETTLEMENT**

    **A.    Legal Standard**

A court may approve a proposed class action settlement of a class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

    **B.    Analysis**

        ***1.    The Settlement Class Meets the Prerequisites for Certification***

By Order dated October 20, 2020 (Dkt. No. 35), the Court determined that the prerequisites of Rule 23 have been satisfied for purposes of certification of the class members proffered. The parties did not seek to certify a new class for settlement. Rather, the settlement is on behalf of the individuals who are members of the Rule 23 class that the Court previously certified.

### 2. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court approved the parties' proposed notice procedures when it granted preliminary approval. Pursuant to those procedures, the Class Administrator provided class members with a Class Notice Packet mailed to all class members based upon last-known addresses provided by defendants. The packet included the long-form notice which provided the class member with a rough calculation of their estimated portion of the settlement based on the business records of the defendant and the option of disputing the same. The class consists of 307 members. Of these class members, eleven packets were returned as undeliverable and reasonable follow-up efforts were not successful, resulting in a reach rate of 96%.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice. After deductions from the common fund for fees, costs, and service enhancement awards and settlement administration, approximately $1,092,343.14 will remain to be distributed among the participating class members. Class members will be paid pro rata, based on the number of overtime hours each class member worked in California during weeks in which the class member

received a per diem payment between October 4, 2015 and the date of preliminary approval.[2] The Agreement provides that no amount will revert to defendant.

### 3. *The Settlement Is Fair And Reasonable*

As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and reasonable.

Liability was contested and the settlement provides class members with a guaranteed and not insubstantial monetary award. At the time the material terms of the settlement were reached and a binding memorandum of understanding was executed, the law applicable to plaintiff's sole theory of liability in this action – that per diem and stipend payments based on hours worked must be included in the "regular rate" used to calculate overtime – was unsettled and conflicting. *Compare Clarke v. AMN Servs., LLC*, 2018 WL 3357467, *2-3 (C.D. Cal. June 26, 2018) (Fischer, J.) (holding that "per diem system" that "varies with the number of hours worked per day or week" need not be included in the "regular rate") *with Carlino v. CHG Medical Staffing, Inc.*, 460 F. Supp. 3d 959, 967 (E.D. Cal. 2020) (Drozd, J.) ("[W]eekly per diem payments that are tied to the number of hour worked in a given week, as here, are part of the regular rate for the purpose of calculating overtime pay.").

Although the Ninth Circuit subsequently reversed the district court in *Clarke* on February 8, 2021, and held that the per diem payments at issue in that case must be included in the "regular rate," *see Clarke v. AMN Servs., LLC,* 987 F.3d 848 (9th Cir. 2021), risks still remain concerning the viability of plaintiff' theory of recovery in this lawsuit. The Ninth Circuit declined to adopt a "per se rule" that "per diem payments that vary with hours worked must *always* be included in the FLSA's regular rate," and instead applied a "case specific inquiry" that took "into account a number of factors, not solely [the per diems] connection to hours worked" to reach a decision in *Clarke*. *Id.* at 856 (emphasis in original). Moreover, RCM contends that there are differences between its per diem and stipend policies and the per diem policies at issue in *Clarke*, and that

---

[2] According to the declaration of the settlement administrator, based on the maximum possible deductions from the Gross Settlement Fund, the average payout per Settlement Class Member is projected to be $3,558.10 with the highest payout of $17,142.43. (Dkt. No. 45-4.)

these differences make this case distinguishable from *Clarke*. Given the "case specific" nature of the Ninth Circuit's holding, coupled with the ongoing absence of any applicable state appellate court holdings, a risk remains that a Court could still find RCM's per diem and stipend payments to qualify for exclusion from the "regular rate," notwithstanding their connection to hours worked. If RCM prevailed, plaintiff and the class members would not receive any amount. Proceeding to trial would have been costly and recovery was not guaranteed. Further, there is the possibility of protracted appeals.

The settlement occurred only after extensive litigation including class certification motion practice, pre-mediation exchange of requested information (including relevant policies, procedures, practices, handbooks, and assignments), and interview of more than 15 witnesses. Counsel for both parties are highly experienced. The record does not indicate collusion or self-dealing.

The Settlement Agreement appears to have been the product of arm's length and informed negotiations. The relief provided for the Class appears to be adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and

(iii) the terms of any proposed award of attorney's fees, including timing of payment.

Moreover, the Settlement Agreement appears to treat Class members equitably relative to each other.

The reaction of the class was entirely positive. As noted, the Court did not receive any opt-outs and objections. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### 4. Other Findings

**Notice to Government Agencies:** The settlement administrator provided the required notice to federal and state attorneys general under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). (Dkt. No. 45-4 ¶ 4.) Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

### 5. *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. Accordingly, the Court grants class certification to the following Settlement Class:

> All non-exempt hourly employees employed by RCM in California who, at any time from October 4, 2015 through October 20, 2020, worked one or more workweeks in which they were paid overtime and received a weekly per diem stipend.

## III. MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

Attorney's fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

The Court analyzes an attorney's fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Here, Class Counsel requests a fee award of $375,000.00. The attorneys' fees sought amount to the 25% benchmark and reflect a multiplier of less than 1.0 of the lodestar totaling $388,125. Defendant does not oppose the fee request which is lower than that authorized in the Settlement Agreement.

The Court has reviewed the class counsel's submission regarding its fee request. (Dkt. No. 65.) The hourly rates that are commensurate with their experience and with the legal market in this district. Moreover, given the nature of the work performed, the Court finds the number of hours to be reasonable and reasonably incurred. The Court also finds that Class Counsel

9

represented their clients with skill and diligence in obtaining the settlement for the class, taking into account the possible outcomes and risks of proceeding trial.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $375,000.00 to be fair, reasonable, and adequate.

### B. Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $7,661.91. The Court finds an award of $7,661.91 in costs reasonable, fair, and adequate.

### C. Service Award

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiff came forward to represent the interests of 307 others, with very little personally to gain. Plaintiff compiled documents, regularly corresponded with counsel, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Because the laws are not self-enforcing, it is appropriate to give incentives to

those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.  Thus, the Court approves the requested incentive award payment for plaintiff Rhonda Hubbard.

**IV.   CONCLUSION**

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**.  The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $375,000.00 in attorneys' fees and $7,661.91 in litigation costs.  Plaintiff Rhonda Hubbard is granted an incentive award of $10,000.00.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement issued on May 12, 2021, and this order.  This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting no later than **April 15, 2022**.  The Court **SETS** a compliance deadline on **April 22, 2022** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.  To the extent there are any remaining issues raised in the accounting prior to the expiration of the issued checks, the Court may set a compliance deadline for a final post-distribution accounting for the end of August 2022.

**IT IS SO ORDERED.**

This terminates Docket Nos. 44 and 45.

Dated: October 28, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**